# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE KOSOGON, | Case No. CV 17-5746 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.
## INTRODUCTION

Plaintiff Elaine Kosogon ("Plaintiff") brings this action seeking to reverse or, in the alternative, to remand the decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her application for social security benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 12-14). For the reasons stated

below, the decision of the Agency is REVERSED and REMANDED for further administrative proceedings.

## II.

## PROCEDURAL HISTORY

On July 17, 2014, Plaintiff filed an application for disability benefits claiming that she became disabled on July 7, 2014. ("Certified Administrative Record ('AR')," Dkt. No. 16 at 154-57). The Agency denied her application on December 15, 2014. (AR 94, 97-102). Plaintiff then requested a hearing, which was held before Administrative Law Judge ("ALJ") Richard Breen on December 17, 2015. (AR 32-82). Plaintiff appeared with counsel and testified. (AR 39-73). Elizabeth Brown-Ramos, a vocational expert, also testified at the hearing. (AR 73-82).

On April 8, 2016, the ALJ issued a decision denying benefits. (AR 16-31). Plaintiff sought review before the Appeals Council, which denied her request on June 5, 2017. (AR 1-6). Plaintiff filed the instant action on August 8, 2017. ("Complaint," Dkt. No. 1).

## III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment

that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step-two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step-three.
(3) Does the claimant's impairment meet or equal the requirements of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step-four.

\\

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

3

|   |   |   |
|---|---|---|
| 1 | (4) | Is the claimant capable of performing his past |
| 2 |   | work? If so, the claimant is found not disabled. |
| 3 |   | If not, proceed to step-five. |
| 4 | (5) | Is the claimant able to do any other work? If not, |
| 5 |   | the claimant is found disabled. If so, the claimant |
| 6 |   | is found not disabled. |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citation omitted); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps-one through four and the Commissioner has the burden of proof at step-five. Bustamante, 262 F.3d at 953-54. If, at step-four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional

---

[2] Residual functional capacity is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a).

4

limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**IV.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process. At step-one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (AR 21). At step-two, the ALJ found that Plaintiff's obesity and osteoarthritis of the left knee are severe impairments,[3] but found that Plaintiff's major depressive disorder is "nonsevere" because it does not cause more than minimal limitation of her ability to perform basic mental work activities. (AR 21-22). At step-three, the ALJ found that Plaintiff's impairments, either singly or in combination, do not meet or equal the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 25). At step-four, the ALJ determined that despite Plaintiff's severe disabilities, she retains a RFC compatible with her previous relevant work. (AR 26-27). The ALJ concluded that Plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

---

[3] The ALJ also found that Plaintiff's myopia, hypertension, and diabetes mellitus are not severe impairments because the evidence does not demonstrate that these are more than slight abnormalities that cause more than minimal limitation in claimant's ability to perform basic work activities. (AR 22). Plaintiff does not challenge these findings.

5

> [T]his individual can occasionally lift and carry 20 pounds, frequently lift and/or carry 10 pounds; can sit, stand, or walk for up to 6 hours in a workday; and push and pull as much as she can lift or carry.

(AR 25). Accordingly, the ALJ found that Plaintiff was not disabled. (AR 27).

## V.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d

at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VI.

## DISCUSSION

### A. Plaintiff's Claims

Plaintiff asserts two claims. First, Plaintiff disputes the ALJ's step-two finding that her mental impairments are nonsevere. ("Plaintiff's Memo," Dkt. No. 17 at 5-10). Plaintiff further contends that the ALJ improperly considered the opinions of her two treating physicians, Karina Shulman, M.D., and Sofia Vaisman, M.D., during the step-two analysis. (Id.).

Second, Plaintiff disputes the ALJ's rejection of her pain and symptom testimony. (AR 10-16). However, because the Court finds the ALJ erred by finding Plaintiff's mental impairments nonsevere, it is unnecessary for the Court to address Plaintiff's second claim.

### B. The Step-Two Evaluation

By its own terms, the evaluation at step-two is a de minimis test intended to weed out the most minor of impairments. See Bowen

v. Yuckert, 482 U.S. 137, 153-154 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step-two inquiry is a de minimis screening device to dispose of groundless claims) (quoting Smolen, 80 F.3d at 1290); Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (step-two is a "de minimis threshold"). An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290 (internal quotations and citations omitted) (emphasis added).

At step-two of the evaluation, the ALJ is bound by 20 C.F.R. §404.1520a. That regulation requires the ALJ to follow a special psychiatric review technique. The ALJ must determine whether the claimant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment and then, if severe, proceed to step-three of the five-step evaluation. Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721 (9th Cir. 2011).

**C.  The ALJ Applied More Than A De Minimis Standard At Step-Two**

The ALJ erred in concluding that Plaintiff's mental impairments do not satisfy the step-two de minimis test. Given the medical evidence, including both the treating and consultative doctors' opinions concerning Plaintiff's mental impairments, Plaintiff's mental impairment satisfied a de minimis standard at step-two.

### 1. The Treating Physicians' Opinions Are Consistent With The Medical Record And Support A Finding Of Severe Mental Impairments

Plaintiff's mental impairments are sufficient to satisfy the step-two de minimis test for severity. Plaintiff's mental health treatment appeared to begin in 2014. (AR 154, 265-73, 314). The record indicates that Plaintiff was diagnosed with major depressive disorder and anxiety. (Id.). The ALJ, however, found the opinions of both Plaintiff's treating physicians to be inconsistent with the medical record and subsequently determined Plaintiff's mental impairments nonsevere. (AR 22-23). The ALJ erred by giving little weight to either treating physician's opinion, as their opinions have substantial support in the record.

After two months of care, treating physician Dr. Sofia Vaisman diagnosed Plaintiff with "anxiety [and] depression" and described her as "disabled" on July 7, 2014. (AR 265-73). Over the following fourteen months, Dr. Vaisman consistently affirmed Plaintiff's anxiety and depression diagnosis. (AR 268, 377, 383, 388, 372, 393, 368, 402). Dr. Vaisman also noted the disorders' negative effects on Plaintiff's memory, concentration, and ability to sleep. (Id.). On six separate occasions, Dr. Vaisman recommended that Plaintiff continue receiving medication and therapy, and receive "totally disabled" status. (Id.) While under Dr. Viasman's care, Plaintiff was regularly prescribed multiple antidepressants, including Abilify, Trazodone, Cymbalta, Lexapro and Xanax. (AR 356, 368, 372, 377, 379, 383).

Dr. Karina Shulman began treating Plaintiff on October 8, 2014. (AR 314). On her initial intake, Dr. Shulman performed an initial assessment and assigned a Global Assessment of Functioning ("GAF") score of 48, representing serious symptoms of major depressive disorder.[4] (AR 308). Throughout their patient-doctor relationship, Dr. Shulman continued to report numerous signs consistent with Plaintiff's major depressive disorder.

On October 8, 2014, Plaintiff was described as depressed and tearful. (Id.) On November 3, 2014, Plaintiff was described as sad and tearful. (AR 298). On November 18, 2015, in Dr. Shulman's mental assessment for work-related activities, she determined that Plaintiff had poor ability to follow work rules, relate to co-workers, interact with supervisors, deal with work stresses, and maintain attention. (AR 339). The assessment defined "poor" as one's "ability to function in [an] area is seriously limited, but not precluded." (Id.). On June 24, 2015, Plaintiff as described as irritable, anxious and depressed. (AR 331). On August 8, 2015, Plaintiff was described as anxious and depressed. (AR 329). On August 19, 2015, Dr. Karina summarily reported that Plaintiff continues to suffer from "major depressive disorder and receives medication treatment." (AR 314). Dr. Shulman stated that Plaintiff "remains very depressed, has low energy, lack of interest and lack of desire for any social interactions." (Id.).

---

[4] A GAF score of 48 is indicative of "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000).

In sum, the Administrative Record and the treating doctors' opinions reveal significant mental health symptoms and treatment, including multiple prescriptions for mental health care. This evidence is sufficient to meet the de minimis standard at step-two and should have resulted in a step-two finding of a severe mental impairment.

**2. The State Agency Consultants' Opinions Are Consistent With A Severe Mental Impairment**

The opinions of Maged Botros, M.D., an examining State agency psychiatric consultant, and F.L. Williams, M.D., a non-examining State agency consultant, further support a finding of a severe mental impairment at step-two. On November 3, 2014, Dr. Botros reported that Plaintiff's "affect was dysphoric, tearful, constricted, and congruent with mood" and diagnosed Plaintiff with "Depression, [Not Otherwise Specified]." (AR 295, 297-98). Dr. Botros also noted that Plaintiff's psychosocial stressors regarding her occupation, education, housing, and access to healthcare were "all in moderate degree." (Id.). Furthermore, Dr. Botros gave Plaintiff a GAF score of 51-60. (AR 299). The ALJ stated that Dr. Botros' GAF score was representative of only mild symptoms, however 51-60 GAF score actually indicates moderate symptoms.[5] This

---

[5] A GAF score of 51-60 is indicative of "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000).

11

evidence, therefore, offers further support of finding a severe mental impairment at step-two.

## VII.
## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 10, 2018

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS OPINION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS OR ANY OTHER LEGAL DATABASE.**